Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Michael Ross, an individual, | No. |
|---|---|
| Plaintiff | |
| v. | **COMPLAINT** |
| Evolus, Inc., a Delaware corporation, | **(Breach of Contract and Breach of Duty of Good Faith and Fair Dealing)** |
| Defendant. | **Jury Trial Demand** |

Plaintiff, Michael Ross, by undersigned counsel, for his Complaint against Defendant Evolus, Inc., a Delaware corporation conducting business in Arizona (Defendant), alleges as follows:

**NATURE OF ACTION**

1. This action seeks remedies, including money damages, for Defendant's breach of contract, including breach of the covenant of good faith and fair dealing.

**PARTIES, JURISDICTION AND VENUE**

2. Mr. Ross is a United States citizen residing in Maricopa County, Arizona.

3. Defendant Evolus, Inc. is a Delaware corporation with its principal place of business located in Newport Beach, California. Defendant has been conducting business in the State of Arizona during times relevant to this action.

4. Defendant does not appear to have registered with the Arizona Corporation Commission to do business in the State of Arizona.

5. Defendant employed Plaintiff during times relevant to this action.

6. At all relevant times, Defendant caused events to occur in Arizona which give rise to the claims being asserted herein.

7. Jurisdiction before this Court is invoked pursuant to 28 U.S.C. § 1332, i.e., diversity jurisdiction based on the complete diversity of the parties and the amount in controversy that exceeds the minimum required for diversity jurisdiction.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events alleged to give rise to Plaintiff's legal claim occurred in this District.

**FACTUAL BACKGROUND**

9. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

10. Plaintiff accepted Defendant's offer of employment on December 18, 2020 to work with Defendant's aesthetic treatment business as a sales representative. Plaintiff began employment on January 4, 2021 as an Aesthetic Experience Manager (Sales) in the Phoenix-South territory.

11. Prior to working with Defendant, Plaintiff had more than 25 years' experience in the industry.

12. In April 2021, Defendant's consultant confirmed a significant imbalance in comparing the Phoenix-South and Phoenix-North territories, and recommended transitioning three major accounts to the Phoenix-South area from the Phoenix-North territory to equalize the sales opportunities.

13. Plaintiff's immediate supervisor became Annie Howley, who rejected the consultant's recommendation and claimed there were plenty of opportunities to develop in the Phoenix-South territory, despite the data.

14. On May 3, 2021, Jason Merkin was selected by Ms. Howley for the Phoenix-North area. Ms. Howley previously worked with Mr. Merkin and recommended him for the job with Defendant.

15. Plaintiff was assigned the Phoenix-South territory.

16. In June 2021, Plaintiff discovered that Ms. Howley had removed sixteen of his existing accounts and transferred them to Mr. Merkin without prior discussion or notice,

contrary to the provision of the compensation terms in SIC Plan 2.2 ("In the event of a change that materially impacts SIC Plan, all affected parties will be notified via email.").

17. Plaintiff expressed his concerns to Ms. Howley about the imbalance between the two accounts and the unfairness of transferring accounts from his historically sparse territory to the top revenue producing Phoenix-North territory, contrary to the SIC Plan.

18. Plaintiff also reported concerns of unfair treatment to the Vice President of Sales Kurt Knab and the Director of Human Resources Chayna Bhaskar regarding the undisclosed transfer of the accounts that had been assigned to him, making his job more difficult and diminishing his compensation.

19. Plaintiff addressed the issues in emails of June 9 and 15, 2021 to Ms. Howley which she failed to answer.

20. Plaintiff then reported the concerns regarding the sixteen transferred accounts to Defendant's Vice President of Sales Mr. Knab via email on June 16, 2021, copying Ms. Howley.

21. The next day, June 17, 2021, Ms. Howley finally responded to his concerns by calling him and severely criticizing him for going over her head to Mr. Knab, threatening that he would suffer pay-back.

22. Plaintiff also complained to Defendant's Human Resources Office about unfair removals of his assigned accounts with no notice or credit for the sales efforts he had input. This was the first time in his 25 years in the sales profession that he had complained to management of unfairness and lack of transparency that critically diminished the results of his work.

23. With Vice President Mr. Knab's involvement in the matter, four of the sixteen removed accounts were returned to Plaintiff.

24. On August 5, 2021, Plaintiff questioned Mr. Merkin why he was working on an account situated in Tucson where Plaintiff was developing sales.

25. Mr. Merkin replied that the Tucson site had the same medical director as one of his existing Phoenix-North accounts in Scottsdale and that Ms. Howley told him to

3

include the account in Tucson (Nurse Gemavie F-137631) with that director. Mr. Merkin told Mr. Ross that Ms. Howley had told him to open accounts wherever he had relationships, regardless of geography, and Raise the Bar Med Spa (Gilbert) F-798832, Artisan Aesthetics (Gilbert) F-812342 and Vibrant Visage (Chandler) F-767721 were amongst them.

26. Plaintiff proposed to Mr. Merkin, on August 5th, that it would be equitable to trade a prospective medspa located in the Phoenix-North territory which was not yet an Evolus customer in exchange for Mr. Merkin's credit on an account within the Phoenix-South territory. Mr. Merkin found this acceptable at the time and placed an order (O-423412) on August 5th for Nurse Gemavie in Tucson. On August 9th Plaintiff opened the account Uptown Medispa with three facilities in Phoenix, Glendale and Scottsdale.

27. Ms. Howley continued to process transfers of customer credits and "islands" located in the Phoenix-South area to Mr. Merkin along with credit for year-to-date sales, harming Plaintiff's opportunities and income source.

28. On August 26, 2021, Ms. Howley again removed one of the four accounts, Samantha Curtis/ Britt Ferrell (F-923452), that Mr. Knab had returned to Plaintiff in June, giving it and the sales credit to Mr. Merkin in the Phoenix-North territory. Ms. Howley had also given Nurse Gemavie in Tucson to Plaintiff along with the sale in order to hide the August 5th sale made by Mr. Merkin.

29. On September 3rd, Plaintiff received an email response from Kathy Tran, Accounts Receivable Representative, and her findings that the Uptown Medispa account which Plaintiff had opened on August 9th no longer existed. Ms. Tran found a new account for that same client had been opened under Mr. Merkin's name and Plaintiff's account appeared to be deleted without notice to Plaintiff.

30. The undisclosed transfers of accounts deep within the Phoenix-South territory assigned to Plaintiff adversely impacted his reasonable expectations of the rights and obligations under the employment contract and management's directives concerning territory he worked and developed only to have it taken away and credit given to a different,

1 favored salesperson.

2   31.   In mid-July, when a new account was opened, Plaintiff used an unauthorized registered nurse consultant to fulfill the request of one of his customers who did not want to use a company-approved consultant who worked at a competing business location within a couple miles from the customer.

   32.   Plaintiff informed his supervisor Ms. Howley who issued a Corrective Action Memo because the action did not comply with company policy.

   33.   Plaintiff acknowledged the company policy and affirmed his intent to comply with company policy.

   34.   Plaintiff continued his utmost dedication and efforts to developing Defendant's business within the Phoenix-South territory.

   35.   On December 5, 2021, one of Plaintiff's significant customers invited him and another of Defendant's representatives to join a Sunday brunch at the customer's home, in order to meet without going to a public restaurant where the COVID-19 pandemic concerns were heightened.

   36.   Plaintiff and his co-worker discussed what they should take to the brunch and decided to take a Bloody Mary mix and vodka, which Plaintiff submitted later as a business expense.

   37.   Later in December 2021, Ms. Howley rejected the small expense reimbursement for the brunch and told him that Defendant would not reimburse the $41.46 liquor expense without food accompanying it. She identified the liquor and another reimbursement request for logo t-shirts as improper and said she would forward the company expense policy for Plaintiff's review.  Ms. Howley never sent the policy.

   38.   Plaintiff accepted the decision and agreed to cover expenses out of his own pocket after Ms. Howley or the Defendant declined them, as a part of the ordinary course of sales business.

   39.   In December 2021, Defendant recognized Plaintiff for achieving and exceeding sales achievement goals for the quarter.  Plaintiff was to have received the

5

promised incentives but has not received the money or trophy.

40. On January 4, 2022, after a brief holiday break, Plaintiff called his supervisor Ms. Howley to discuss his business development goals. She replied that she would call him later in the day.

41. Ms. Howley called Plaintiff later on January 4, 2022, with a representative of Defendant's Human Resource Office present. Ms. Howley immediately announced that Defendant decided to terminate Plaintiff based on his purchase of liquor for the December brunch.

42. Plaintiff was stunned that the relatively small expense request for the $41.46 vodka and Bloody Mary mix, which already had been addressed in December, was brought up as a justification to terminate him.

43. Plaintiff challenged this action as unfair and reminded Ms. Howley that had agreed to pay the expense himself because expense reimbursements often involve gray areas.

44. Defendant's managers failed to treat Plaintiff in good faith and fair dealing where they regularly favored the sales representative assigned to the Phoenix-North territory and took away accounts within Plaintiff's territory, creating obstacles and impacting Plaintiff's opportunities and earnings.

45. Defendant's actions impeded Plaintiff's reasonable expectations under the employment he accepted with Defendant.

46. Defendant gave Plaintiff no notice that the December 2021 expense submittals were serious concerns.

47. The stated ground for termination is not credible and, subsequently, Defendant gave shifting reasons for termination of Plaintiff.

48. Plaintiff has suffered damages, resulting from Defendant's breach of their contract.

49. Plaintiff also has incurred and will continue to incur consequential damages, attorneys' fees and expenses in connection with Defendant's breach of its duties.

6

# LEGAL CLAIMS

## Claim One

### Breach of Contract, Including Breach of Good Faith and Fair Dealing

50. Plaintiff incorporates all prior allegations as though fully set forth herein.

51. Plaintiff and Defendant entered into an employment contract when Plaintiff accepted Defendant's offer of employment and continued employment to develop the Phoenix-South territory.

52. In Arizona, a duty of good faith and fair dealing is implied in every contract.

53. Plaintiff reasonably relied on the job expectations management told him when he accepted the job and affirmed at different times by his managers when they assigned the Phoenix-South territory for his territory to develop.

54. Plaintiff reasonably relied on Defendant's representations that he was to develop and receive credit and compensation based on his developed business within Defendant's Phoenix-South territory.

55. Defendant breached its duty to give notice where it changed Plaintiff's compensation, as set forth in SIC Plan Section 2.2: "In the event of a change that materially impacts SIC Plan, all affected parties will be notified via email."

56. The failure to give Plaintiff notice materially breached Defendant's duty.

57. Defendant breached the employment contract and its duty to act in good faith and fair dealing when it unfairly removed accounts and year-to-date credits for sales within customer accounts assigned to Plaintiff's territory and gave them to another co-worker who already held the more favorable Phoenix-North territory.

58. Defendant breached the Plaintiff's employment contract by failing to deliver to Plaintiff the performance incentive he earned.

59. Defendant breached the employment contract and duty to act in good faith and fair dealing when it favored the Phoenix-North sales representative allowing him to open customer accounts deep in the Phoenix-South territory but not allow Plaintiff to open accounts in Phoenix-North territory.

60. Defendant breached its duty of good faith and fair dealing when it terminated Plaintiff for a pretextual reason.

61. As a result of Defendant's breach, Plaintiff has suffered actual and consequential damages, including lost earnings and benefits.

62. As a result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has suffered emotional distress and compensatory damages, in amounts to be proven at trial.

63. Plaintiff's claim arises out of a contract and, therefore, he is entitled to recover attorneys' fees and costs incurred, pursuant to A.R.S. §§ 12-341 and 341.01.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Mr. Ross requests Judgment in his favor on the legal claims and against the Defendant, as follows:

A. for actual and consequential damages proved by Plaintiff for the breach of contract;

B. for compensatory damages and emotional distress from breach of the covenant of good faith and fair dealing;

C. for attorneys' fees and costs, pursuant to A.R.S. §§ 12-341, 12-341.01;

D. for pre- and post-judgment interest until paid in full; and

E. for any other damages or remedies the Court deems just and reasonable.

## REQUEST FOR JURY TRIAL

Plaintiff demands a jury trial on all matters that may be submitted to a jury.

DATED this 25th day of May 2022.

                YEN PILCH ROBAINA & KRESIN PLC

                By /s/ Phil S. Flemming
                    Phil S. Flemming
                    Attorneys for Plaintiff